**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| JOANN SHERNOFF; DSCC,<br><br>      Plaintiffs,<br><br>      v.<br><br>MARCI ANDINO, in her official capacity as Executive Director of the South Carolina State Election Commission; HOWARD M. KNAPP, in his official capacity as Director of Voter Services of the South Carolina State Election Commission; JOHN WELLS, in his official capacity as Chair of the South Carolina State Election Commission; and JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL and SCOTT MOSELEY, in their official capacities as members of the South Carolina State Election Commission,<br><br>      Defendants. | Case No. _____ |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs JoAnn Shernoff and DSCC, by and through the undersigned attorneys, file this Complaint for Injunctive and Declaratory Relief against Defendants Marci Andino, in her official capacity as Executive Director of the South Carolina State Election Commission (the "Commission"), John Wells, in his official capacity as Chair of the Commission, and Clifford J. Edler and Scott Moseley, in their official capacities as members of the Commission. This Complaint is based on the facts and allegations below. Plaintiffs allege as follows:

**INTRODUCTION**

1.    Absent relief from this Court, thousands of lawful South Carolina voters stand to be disenfranchised in the coming November election (the "November Election") based on nothing more than technical errors made by the voters or witnesses on their ballots as they attempt to

- 1 -

navigate the absentee voting process, or—even worse—the inexpert decision of elections officials that the signature on the ballot return envelope does not match the signature of the voter on file. Despite the fact that the same types of entirely predictable (and innocent) mistakes are made in every election, and that signature matching is a highly suspect process (even under the best of circumstances), South Carolina law provides *no* notice or opportunity to voters to "cure" such issues with their ballots before they are rejected entirely. Plaintiffs recognize there is an existing suit by the League of Women Voters, *League of Women Voters of S.C. et al. v. Andino et al.*, No. 2:20-cv-3537 (D.S.C.), that seeks a cure mechanism for absentee ballots rejected for signature deficiencies, but bring this suit to emphasize the issue of ballot envelopes that do not contain the required witness signature and the need for a unique cure process for missing witness signatures that differs from other types of signature deficiencies.

    2.    Even before the pandemic, courts in other jurisdictions routinely found that the failure to provide notice and an opportunity to voters to cure such issues in time to avoid disenfranchisement violated the United States Constitution. This year, the number of voters who are threatened with disenfranchisement as a result of South Carolina's unconstitutional system will be multiplied several times over. The November Election will be the first that this country has held during a pandemic, the nature of which makes in person voting inherently dangerous for many of the State's most vulnerable citizens. Indeed, South Carolina's General Assembly recognized as much when, before the June primary and runoff elections, it—for the very first time in this State's history—enacted legislation that would allow no-excuse absentee voting. The vast majority of South Carolina's voters had no prior experience voting absentee. Due to a preliminary injunction in place at the time, voters were informed that their ballots would count for the June primary and runoff elections even without a witness signature. The General Assembly subsequently extended no-excuse absentee voting to the November general election. The witness requirement was again

suspended by court order for almost three weeks before that order was stayed by the U.S. Supreme Court. Many voters came to rely upon the witness requirement's suspension and have not received word about the stay order prior to casting their absentee ballots without a witness signature. As noted, many individuals are voting by absentee for only the first or second time in the November general election. Their lack of experience will make them more susceptible to making technical errors in filling out the ballot envelope, and thus much more at risk of being disenfranchised by South Carolina's lack of adequate cure procedures.

3. This case seeks to protect the rights of those thousands of South Carolinians, including Plaintiff JoAnn Shernoff, as well as South Carolina voters who have or will cast ballots in support of the Democratic candidate supported by the DSCC, whose ballots will be disregarded in their entirety due to errors in navigating the absentee process that have nothing to do with those voters' eligibility to vote, or elections officials' mistaken flag of their signature as a mismatch with the voter signature on file. Plaintiffs seek an order from this Court that would provide voters with notice and a reasonable opportunity to cure issues identified with their ballots in the November Election. For those voters whose ballots are rejected due to a missing voter signature, Plaintiffs' desired order would require elections officials to promptly notify the voter by phone and e-mail and mail if neither phone nor e-mail is available and allow the voter to cure their ballot by submitting an affidavit affirming their identity by mail or e-mail to their county up until the close of business on November 6, which is a mere three days after election day. For those voters whose ballots are rejected due to a missing witness signature, Plaintiffs seek an order requiring that the voters be notified and advised that they may avoid disenfranchisement by casting a new absentee ballot by mail with the required signatures, or by voting in person during early voting or on election day.

4. Absent such relief, thousands of lawful South Carolina voters—including

Ms. Shernoff—will be disenfranchised due to errors (by the voter or their witness or even by elections officials unilaterally) that could be easily cured without imposing significant administrative burdens. Even in an ordinary year, the State has no interests that could sufficiently justify this severe burden on voting rights. But in this election, the sheer magnitude of voters who will be attempting to navigate the often confusing process of voting absentee makes relief particularly urgent and necessary. Nor will the burdens fall equally on South Carolina's voting population. Studies have shown that African American voters in particular are far more likely to have their ballots rejected for otherwise curable errors. At the same time, South Carolina's African American residents have also suffered disproportionally in the pandemic. To give just one example, while COVID-19 has claimed the lives of 36 out of every 100,000 white South Carolinians as of September 15, 2020, a staggering 98 out of every 100,000 Black South Carolinians have died from the virus during the same timeframe. African American voters have substantially more reason to be concerned about risking exposure to COVID-19 by voting in person, but the absence of a cure procedure means that, in making the choice to protect their health, the result may be that they are disenfranchised, in many cases due to no fault of their own.

5.    For all of these reasons, Plaintiffs file this action and seek an emergency injunction from this Court as described above.

## PARTIES

6.    Plaintiff JoAnn Shernoff is a resident of Beaufort County, South Carolina. She is a registered South Carolina voter who successfully voted in the 2020 primary election. During the primary election, no witness signature was required for South Carolina voters to successfully vote absentee. Ms. Shernoff timely requested an absentee ballot for the November 2020 general election and received it in the mail on or about October 7, 2020. Ms. Shernoff generally followed news stories regarding court cases affecting the need for a witness signature, and she read the instruction

insert included with her general election ballot. It was her understanding from this instruction—provided by South Carolina election officials—that the public would be notified if a witness signature was required, but that at the time her ballot was mailed no witness signature was required. In accordance with those instructions and that understanding, Ms. Shernoff completed and returned her ballot on or about October 9, 2020. Given the instructions she received with her ballot, and the fact she had not received any additional notice from election officials, Ms. Shernoff understood that she did not need a witness signature. Accordingly, she mailed her ballot on October 9 without a witness signature. Unbeknownst to her, days earlier the U.S. Supreme Court had held, late on October 5, that only absentee ballots received by *election officials* on or before October 7 could be counted without a witness signature. Ms. Shernoff learned of this decision only *after* she had already returned her ballot to elections officials without a witness signature. As of the time of this filing, Ms. Shernoff has not received any notice from election officials that her ballot has been rejected, but she expects that her ballot will be rejected and she will be disenfranchised due to the absence of a witness signature. Voting is incredibly important to Ms. Shernoff and she is deeply upset that her ballot stands to be rejected, despite her best efforts to follow the rules as they were presented to her at the time she cast her ballot. If provided an opportunity to do so, Ms. Shernoff would cure any deficiency identified on her ballot to ensure that her vote counts in this election.

7. Plaintiff DSCC is the national senatorial committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14). Its mission is to elect Democratic candidates to the U.S. Senate, including in South Carolina. DSCC works to accomplish its mission in South Carolina and across the country by, among other things, making expenditures for, and contributions to, Democratic candidates for U.S. Senate, including in South Carolina. It also assists state parties throughout the country, including the South Carolina Democratic Party, by providing financial support for activities that further the Democratic Party's shared interest in electing Democratic candidates up

and down the ticket in a joint effort known as the "coordinated campaign." In 2018, DSCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic Senate candidates. In 2020, DSCC again has made and expects to continue to make substantial contributions and expenditures to support the Democratic candidate for U.S. Senate in South Carolina, as well as to support the coordinated campaign efforts in the State.

8. South Carolina's failure to notify and allow lawful voters to cure their ballots when issues are identified with the return envelope, including missing signatures, perceived signature mismatches, and other errors or omissions that have nothing to do with the voter's eligibility to vote, directly harms DSCC. It is inevitable that Democratic voters, or those who would vote for the Democratic candidate for U.S. Senate in South Carolina, will not have their vote counted as a result of the lack of a notice and cure process or procedure. The lack of a notice and cure process also requires DSCC to expend and divert additional funds and resources on voter persuasion efforts and other activities in South Carolina, at the expense of its efforts in other states, to combat the effects of a lack of a notice and cure process. This frustrates DSCC's mission of, and efforts in, electing the Democratic candidate to the U.S. Senate in South Carolina and other Democratic candidates to the U.S. Senate nationwide.

9. DSCC's members and constituents are directly harmed by the inadequate cure period. African Americans are an important part of DSCC's membership and constituency, and are disproportionately disenfranchised by the lack of notice and cure procedures. It is virtually certain that some DSCC members and constituents will mail a ballot that is erroneously flagged by an elections official as having a signature that does not match that of the voter on file, or is missing a signature or witness signature, or presents some other curable issue with the information provided on the outer envelope in which South Carolina voters submit absentee ballots. These DSCC members and constituents face an imminent threat of having their vote denied in 2020 as a

direct result of South Carolina's failure to provide for notice and a cure process, and DSCC can obtain relief for them without their individual participation. DSCC brings this claim on its own behalf, as well on behalf of its members and constituents.

10. Defendant Andino is sued in her official capacity as Executive Director of the South Carolina State Election Commission. The Executive Director is the Chief Administrative Officer for the State Election Commission and is required by law to supervise the County Boards of Elections and Voter Registration. S.C. Code Ann. § 7-3-20. In this role, she is tasked with ensuring that those County Boards comply with state and federal law in conduct of elections and voter registration. *Id.* at § 7-3-20(C).

11. Defendant John Wells is the Chair of the South Carolina Election Commission and is sued in his official capacity. Defendants Clifford J. Edler and Scott Mosley are members of the Commission and are sued in their official capacities. The Executive Director serves at the pleasure of the Commission. S.C. Code Ann. § 7-3-20(A). The Commission is responsible for carrying out all laws related to absentee registration and voting and promulgating relevant regulations. *Id.* § 7-15-10. The enumerated mission of the Commission is, in relevant part, to ensure that every eligible citizen has the opportunity to participate in fair and impartial elections with the assurance that every vote will count.

## JURISDICTION AND VENUE

12. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution and under 52 U.S.C. §§ 10301 and 10302.

13. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 52 U.S.C. §§ 10301, 10302, 10308(f), and 10310(e).

14. This Court has personal jurisdiction over Defendants, who are sued in their official

capacities only.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

16. This Court has the authority to enter declaratory and injunctive relief under Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## STATEMENT OF FACTS AND LAW

### A. South Carolina imposes a number of hurdles that threaten disenfranchising lawful voters who vote using absentee voting.

17. South Carolinians who seek to cast mail absentee ballots must navigate various restrictions to avoid disenfranchisement. The provisions challenged in this litigation are discussed briefly below.

### The Signature Requirement

18. County election officials send voters who have applied to vote by absentee ballot a packet. The packet contains the ballot, related instructions on how to cast the ballot properly, an envelope marked "Ballot Herein" into which the voter will place the completed ballots, and a return-addressed ("return") envelope. The return envelope contains an oath that the voter must sign. S.C. Code § 7-15-370.

19. Specifically, the return envelope provides places for the voter to write in his or her name and address and a blank for the voter to sign the required oath. *Id.* §§ 7-15-375, 7-15-380. That oath reads as follows: "I hereby swear (or affirm) that I am duly qualified to vote at this election according to the Constitution of the State of South Carolina, that I have not voted during this election, that the ballot or ballots contained in this envelope is my ballot and that I have received no assistance in voting my ballot that I would not have been entitled to receive had I voted in person at my voting precinct." *Id.* § 7-15-380.

20. An absentee ballot cannot be counted if the oath is not signed by the voter. *Id.* § 7-

- 8 -

15-420(B) ("Signature Requirement"). The Signature Requirement also encompasses any decision to reject an absentee ballot because of a perceived signature mismatch with the voter's signature on file.

### The Witness Requirement

21. For an absentee ballot to be counted, a voter must sign the oath on the back of the return envelope and that oath must be witnessed by another individual, whose address and signature "shall appear on the oath." S.C. Code Ann. § 7-15-380; *see also id.* §§ 7-15-220, -385.

22. Election officials must reject all unwitnessed ballots and need not give the voter notice or an opportunity to cure. S.C. Code Ann. § 7-15-420 ("Witness Requirement" and along with the Signature Requirement the "Challenged Provisions"). Nor are election officials required to notify voters that, if their absentee ballot is rejected, the voter still has an opportunity to vote in person or by submitting a new, compliant absentee ballot.

### CLAIMS FOR RELIEF

#### COUNT I
#### First Amendment and Equal Protection
#### U.S. Const. amends. I, XIV, 42 U.S.C. § 1983
#### Undue Burden on the Right to Vote

23. Plaintiffs incorporate by reference and reallege all prior paragraphs of this Complaint and the paragraphs in the counts below as though set forth fully herein.

24. Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a state cannot utilize election practices that unduly burden the right to vote. "There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have the ballot counted." *Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964) (citation and quotation omitted).

25. A court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that a plaintiff

seeks to vindicate against the justifications put forward by the state for the burdens imposed by the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted). "We believe that a regulation which imposes only moderate burdens could well fail the *Anderson* balancing test when the interests that it serves are minor, notwithstanding that the regulation is rational." *McLaughlin v. N. Carolina Bd. of Elections*, 65 F.3d 1215, 1221 n.6 (4th Cir. 1995). "This balancing test requires hard judgments—it does not dictate automatic results." *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 716 (4th Cir. 2016) (quotation marks omitted).

26. A court considering a challenge need not accept a state's justifications at face value, particularly where those justifications are "speculative," otherwise it "would convert *Anderson-Burdick*'s means-end fit framework into ordinary rational-basis review wherever the burden a challenged regulation imposes is less than severe." *Soltysik v. Padilla*, 910 F.3d 438, 448–49 (9th Cir. 2018); *see McLaughlin*, 65 F.3d at 1221 n.6.

27. Here, unless Plaintiffs are granted the relief requested herein, the right to vote of thousands of South Carolina voters, including Plaintiffs and DSCC's members and constituents, will be severely burdened (and in some cases, entirely denied) by the Challenged Provisions, which will operate, both independently and together, to unduly burden the right to vote without sufficient justification to outweigh the imposition of that burden.

28. The practices outlined above impose a severe burden—disenfranchisement—on the right to vote. The State's failure to provide a cure period for voters to remedy perceived failure to comply with the Signature Requirement does not serve any legitimate, let alone compelling, state interest. The State already has a cure process for voters who cast provisional ballots, with such

voters having until the Friday following a general election to demonstrate their right to vote. S.C. Code Ann. §§ 7-13-830, 7-17-10, 7-17-510.

29.     Likewise, the Witness Requirement will disenfranchise voters who fail to have a witness sign and put their address on the ballot envelope. This burden is particularly significant in light of the conflicting information voters have been provided regarding whether a witness is—unlike in the primary election—required in the general election. Some voters received instructions that a witness was not required and were never notified subsequently that the Witness Requirement is back in effect. The State's failure to timely notify voters that their ballot has been rejected for want of a witness signature so that the voter can cast another absentee ballot or vote in person does not serve any legitimate, let alone compelling, state interest.

30.     Many South Carolina voters will suffer direct and irreparable injury if Defendants refuse to allow them an opportunity to cure the rejection of their absentee ballots. Without relief from this court, these voters will be deprived of their right to vote in the November Election.

## COUNT II
### Procedural Due Process
### U.S. Const. amend. XIV, 42 U.S.C. § 1983
### Denial of Procedural Due Process in Violation of the Fourteenth Amendment

31.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

32.     A procedural due process claim under the Due Process Clause of the Fourteenth Amendment requires "(1) a deprivation of a constitutionally protected liberty . . . interest, and (2) a denial of adequate procedural protections." *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018). If there is a constitutionally protected liberty interest at stake, a court must then determine the adequacy of procedural protections by examining "'first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)).

33. South Carolina law allows fundamental voting rights to be exercised by mail. There is a constitutionally protected liberty interest in voting that Defendants may not deprive without adequate procedures. The nature of the private interest at stake in this case—the right to vote and to have that vote count—is the most precious liberty interest of all because it is preservative of all other basic civil and political rights.

34. It is virtually certain that the Challenged Provisions, by failing to provide voters with notice and an opportunity to cure the rejection of their absentee ballot, will erroneously deprive some eligible voters (including Democratic voters) of this liberty interest.

35. Additional procedural safeguards for perceived failure to meet the Signature Requirement would be immensely valuable in safeguarding against that deprivation by affording voters notice and an opportunity to cure. Specifically, Plaintiffs seek an order requiring Defendants to direct county election officials to promptly review absentee ballot return envelopes for signature-related deficiencies and provide notice to voters by e-mail and phone and by mail if e-mail and phone are not available, within two business days of the identification of the deficiency and to inform voters that they may cure the deficiency. Voters who did not fulfill the Signature Requirement should be able to cure by submitting an affidavit or other proof of identity by email or in person until the same deadline as that for curing provisional ballots (the Friday after election day).

36. Additional procedural safeguards for perceived failure to meet the Witness Requirement are likewise necessary to guard against the risk of deprivation of the right to vote.

Specifically, Plaintiffs ask that this Court order Defendants to direct county election officials to promptly review absentee ballot return envelopes as they come in and provide notice to voters of any perceived witness signature-related deficiency on the envelope within two business days of identification of the deficiency by e-mail and phone and by mail if e-mail and phone are not available. The notice would also inform voters of their right to cast a ballot by submitting a new absentee ballot with the required witness information or by voting in person during early voting or on Election Day. In addition, state election officials should make available a list of voters (including name, mailing address, and date of birth) who have submitted absentee ballots that do not comply with the Challenged Provisions on a daily basis through November 3, 2020 so that organizations such as DSCC may affirmatively notify voters that their absentee ballots are defective and, within the existing confines of South Carolina law, help those voters avoid disenfranchisement.

37. Providing these additional cure processes would create little additional fiscal or administrative burden, since the State already has a cure process in place for provisional ballots. These additional cure processes would also promote the State's interest in ensuring that eligible voters are not wrongly disenfranchised.

38. Many South Carolina voters will suffer direct and irreparable injury if Defendants refuse to allow them an opportunity to cure the rejection of their absentee ballots. Without relief from this Court, these voters will be deprived of their right to vote in the November Election.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court:

a) Declare that failure to provide voters notice and an opportunity to cure alleged deficiencies related to the Signature Requirement imposes an undue burden on the right to vote in violation of the First and Fourteenth Amendments to the Constitution

      of the United States;

b)    Declare that failure to provide voters notice and an opportunity to cure alleged deficiencies related to the Witness Requirement imposes an undue burden on the right to vote in violation of the First and Fourteenth Amendments to the Constitution of the United States;

c)    Declare that the Challenged Provisions deprive Plaintiffs of procedural due process in violation of the Fourteenth Amendment to the Constitution of the United States by disenfranchising absentee voters without providing them with notice of the rejection of their absentee ballot and an opportunity to be heard;

d)    Issue preliminary and permanent injunctions enjoining the Defendants from failing to provide absentee voters with notice and an opportunity to cure the rejection of their absentee ballots for deficiencies related to the Signature and Witness Requirements. Plaintiffs seek an injunction further requiring that Defendants direct county election officials to:

1) promptly review absentee ballot envelopes for disqualifying deficiencies (e.g., a missing voter or witness signature) on a rolling basis as they are received;

2) notify voters of deficiencies within two business days of the identification of the deficiency by phone and e-mail (if information is available) and mail if phone and e-mail are not available;

3) create and make available a list of voters (including name, mailing address, and date of birth) who have submitted absentee ballots that do not comply with the Challenged Provisions on a daily basis through November 3, 2020 so that organizations such as DSCC may notify voters that their absentee ballots are defective and help those voters avoid disenfranchisement;

4) permit voters who have submitted an absentee ballot that is rejected because of the Signature Requirement to cure their ballot by submitting an affidavit by mail or e-mail (either themselves or via a third party, such as a state party) to their county, affirming their identity; and

5) clarify that voters who submitted an absentee ballot without fulfilling the Witness Requirement are permitted to cure that deficiency by voting absentee or in person on Election Day;

e) Award reasonable attorneys' fees and costs to Plaintiffs under 42 U.S.C. § 1988; and

f) Grant any additional or alternative relief the Court may deem appropriate under the circumstances.

Dated: October 18, 2020

By:  /s/ Thomas J. Tobin
William B. Stafford*
Thomas J. Tobin Fed. Bar. No. 12703
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  (206) 359-8000
Facsimile:  (206) 359-9000
wstafford@perkinscoie.com
ttobin@perkinscoie.com

Marc E. Elias*
Bruce V. Spiva*
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
melias@perkinscoie.com
bspiva@perkinscoie.com

Sopen Shah*

PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
sshah@perkinscoie.com

*Attorneys for Plaintiffs*
*JoAnn Shernoff*
*Democratic Senatorial Campaign Committee;*


*\*Pro Hac Vice Motion Forthcoming*

- 16 -